## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

DAVID R. CHAMBERLIN

      Plaintiff,

vs.                                        No. CIV  02-603  JB/ACT

THE CITY OF ALBUQUERQUE, and
OFFICER ANDREW Lehocky,
Individually and in his Official Capacity
as a Police Officer,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiff's Motion for Protective Order

Staying Further Litigation for Sixty (60) Days and for a Scheduling Conference Thereafter (Doc. 51).

Because the Court finds that a stay of this matter will adequately balance the Plaintiff's Fifth

Amendment right and the Defendants' right to conduct discovery, it will grant the motion.

## BACKGROUND

On May 24, 2002, Plaintiff David Chamberlin ("Chamberlin") filed his *pro se* Complaint

against Defendant City of Albuquerque ("City") and Defendant Police Officer Andrew Lehocky

("Lehocky") (Doc. 1).   Chamberlin filed a *pro se* Amended Complaint on May 28, 2002 (Doc. 2).

At that time, criminal charges were pending against Chamberlin as a result of his conduct in the

incident that underlies this lawsuit.  On June 20, 2002, Chamberlin's attorney entered his appearance

in this matter (Doc. 5).

Chamberlin's Amended Complaint arises from his treatment by Lehocky before and during

1

his arrest by Lehocky.   After Lehocky arrested Chamberlin, Lehocky charged Chamberlin with resisting arrest and battery on a peace officer.   In his Amended Complaint, Chamberlin alleges that he was the innocent victim of police brutality.

Chamberlin does not allege that Lehocky falsely arrested him.  Chamberlin instead alleges that the force used on him was grossly and shockingly disproportionate to any offenses that he may have committed.   Chamberlin alleges that Lehocky used excessive force against him by ordering a police service attack dog, Bart ("PSD Bart"), to bite Chamberlin repeatedly, after Chamberlin posed no threat to the safety of Lehocky or anyone else.   Chamberlin contends that Lehocky undertook these actions with malicious and nefarious intent.

To defend against Chamberlin's claims, Lehocky attempted to depose Chamberlin about the facts underlying his claims.  Chamberlin and his attorney took no action to invoke Chamberlin's Fifth Amendment rights until Lehocky set Chamberlin's deposition for August 29, 2003.  See Notice of Non-appearance, filed August 26, 2003 (Doc. 46).  In violation of local civil rule 30.2, Chamberlin filed his Notice of Non-Appearance without an accompanying Motion for Protective Order and only three days before his deposition.  See D.N.M. LR-Civ. 30.2.[1]  Chamberlin did not file his Motion for Protective Order until September 23, 2003.

The information that Lehocky seeks from Chamberlin about the factual basis for his claims is important to Lehocky's ability to mount an effective defense.  Given the claims that Chamberlin brings, the importance of the information that Lehocky seeks is self-evident.  And there is no

---

[1] "**D.N.M. LR-CIV. 30.2.  Non-Appearance at Deposition.**  Failure of a deponent to appear at the time and place designated may be regarded as a willful failure to appear pursuant to Fed. R. Civ. P. 37(d) or contemptible conduct pursuant to Fed. R. Civ. P. 45(e), unless a motion for protective order and a notice of non-appearance are served at least five (5) calendar days before the scheduled deposition . . . ."

alternative means of securing this information.  This important information is uniquely within Chamberlin's control.  There is no effective substitute for Chamberlin's responses to Lehocky's discovery requests.  To prepare his defense, Lehocky must determine the factual basis for Chamberlin's claims.

Neither a videotape or audiotape of the incident exists.  There are several citizen witnesses who saw a portion of the incident, but not the entire incident.  Those witnesses are, however, a poor proxy for Chamberlin's testimony.  For example, only Chamberlin can explain what occurred from his point of view.  Thus, the only means available to fully examine Chamberlin's claims is to obtain discovery from Chamberlin about his claims.  By denying Lehocky the opportunity to depose him, Chamberlin effectively prevented Lehocky from adequately defending this case.

Chamberlin's arrest and criminal charges are discoverable under the liberal standards for discovery.  The relevant inquiry is the objective reasonableness of Lehocky's actions at the time that he undertook those actions.  A portion of that inquiry will involve questioning Chamberlin as to the specific actions he took.

It is thus inevitable that defense counsel will inquire into Chamberlin's actions and whether he committed the acts alleged in the criminal charges still pending against him.  Moreover, Lehocky's retained medical expert intends to inquire into all of the actions of Chamberlin on the day in question in his scheduled evaluation of Chamberlin.  This situation places Chamberlin between a "rock" and a "hard place."  In essence, Chamberlin must potentially incriminate himself in the criminal court to maintain his action in this Court.

Chamberlin regrets bringing this action before the conclusion of his criminal charges.  He did so *pro se* and was therefore without counseling as to the advisability of resolving the criminal charges

before bringing this action.  Counsel now represents Chamberlin, and he is therefore aware of the potential situation discussed above.  Moreover, both Chamberlin and his counsel believed that his charges would be resolved before the commencement of his deposition.  The state court, however, recently continued Chamberlin's criminal case.

## LEGAL ANALYSIS

Discovery in civil cases allows the parties to obtain certain basic information that the parties and the Court need to prepare for trial and to make an informed decision about settlement.  See, e.g., Fed. R. Civ. P. 26, Advisory Committee Notes, 1993 Amendments, Subdivision (a).  Lehocky, as any civil litigant, is entitled to discovery of "any matter, not privileged, that is relevant to the claim or defense of any party . . . ."  Fed. R. Civ. P. 26(b)(1).  The relevance standard "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."  Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978) (citation omitted).  See Centurion Indus., Inc. v. Warren Steurer & Assoc., 665 F.2d 323, 326 (10th Cir. 1981) (stating that relevancy is construed more broadly during discovery than at trial).  Courts view discovery requests with the liberality that the federal rules contemplate, and the drafters of those federal rules designed them, in part, to "make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent."  United States v. Proctor & Gamble Co., 356 U.S. 677, 682 (1958) (citing Hickman v. Taylor, 329 U.S. 495, 501 (1947)).

Rule 26(b)(1), however, provides that Lehocky may not conduct discovery of a matter that is privileged.  See Fed. R. Civ. P. 26(b)(1).  There is no dispute that Chamberlin "unquestionably may assert a Fifth Amendment privilege in this civil case and refuse to reveal information properly subject

to the privilege . . . ." Mid-America's Process Serv. v. Ellison, 767 F.2d 684, 686 (10th Cir. 1985) (citing United States v. Kordel, 397 U.S. 1, 7-8 (1970)). The Supreme Court of the United States has stated that the Fifth Amendment guarantees "the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty . . . for such silence." Spevack v. Klein, 385 U.S. 511, 514 n.2 (1967) (quoting Malloy v. Hogan, 378 U.S. 1, 8 (1964)). The concept of "penalty" includes "the imposition of any sanction which makes assertion of the Fifth Amendment privilege 'costly.'" Spevack v. Klein, 385 U.S. at 515 (quoting Griffin v. California, 380 U.S. 609, 614 (1965)).

Chamberlin acknowledges, however, that a court may dismiss a claim based on a party's invocation of his or her Fifth Amendment rights. See Wehling v. Columbia Broadcasting System, 608 F.2d 1084, 1087 n. 6 (5th Cir. 1979) ("While dismissal is unavailable as a Sanction, the district court is not precluded from using dismissal as a Remedy to prevent unfairness to the defendant."). A number of courts acknowledge the court's power to dismiss even in the face of a party's proper assertion of his or her Fifth Amendment right. See, e.g., Serafino v. Hasbro, Inc., 82 F.3d at 518; Wehling v. Columbia Broad. Sys., 608 F.2d at 1087 n. 6; Lyons v. Johnson, 415 F.2d 540, 542 (9th Cir. 1969); Mt. Vernon Sav. & Loan v. Partridge Assocs., 679 F. Supp. 522, 529 (D. Md. 1987); Stop & Shop Cos. v. Interstate Cigar Co., 110 F.R.D. 105, 108 (D. Mass. 1986); Jones v. B.C. Christopher & Co., 466 F. Supp. 213, 227 (D. Kan. 1979); Penn Communications Specialties, Inc. v. Hess, 65 F.R.D. 510, 512 (E.D. Pa. 1975); Wansong v. Wansong, 478 N.E.2d 1270 (Mass. 1985). The Supreme Court has indicated that the assertion of the privilege may sometimes disadvantage a party. See Baxter v Palmigiano, 425 U.S. 308, 318 (1976) (discussing the possibility of allowing adverse inferences to be drawn from a civil party's assertion of the privilege).

By asserting his Fifth Amendment privilege in this civil case, Chamberlin "may have to accept certain bad consequences that flow from that action." Mid-America's Process Serv. v. Ellison, 767 F.2d at 686 (citations omitted).  Put simply, "a civil plaintiff has no absolute right to both his silence and his lawsuit." Wehling v. Columbia Broad. Sys., 608 F.2d at 1088.  There is no indication here, however, that Chamberlin wishes to "retreat[] under the cloak of the Fifth Amendment [to] gain an unequal advantage against the party he has chosen to sue." Id. at 1087.

Nevertheless, while Chamberlin has an absolute right not to reveal any potentially incriminating material, Chamberlin's invocation of his right under these circumstances may, intentionally or unintentionally, place Lehocky at a disadvantage.  The issue is whether there are alternative remedies for the dilemma presented.  Lehocky argues that the reason for allowing the imposition of a "sanction" against Chamberlin for his proper assertion of his Fifth Amendment privilege is to ensure fairness to all parties to the litigation:  "To hold otherwise would, in terms of the customary metaphor, enable plaintiff to use his Fifth Amendment shield as a sword." Id. at 1087 (citations omitted).

To allow Chamberlin both to refuse to answer discovery and to continue with his lawsuit would be to allow him to "use his shield as a sword." Id.  Unlike a criminal proceeding, the parties in this civil case are on a somewhat equal footing. To properly balance these competing interests, this Court should strive to accommodate Chamberlin's Fifth Amendment right, while ensuring that Lehocky is not unduly disadvantaged.  More specifically, Chamberlin's "Fifth Amendment privilege should be upheld unless [Lehocky has a] substantial need for particular information and there is no other less burdensome effective means of obtaining it." Serafino v. Hasbro, Inc., 82 F.3d 515, 518 (1st Cir. 1996) (citations omitted) (emphasis added).

In this case, there is no effective substitute for Chamberlin's responses to Lehocky's discovery requests.  Lehocky contends that, having no other means to examine Chamberlin's claims, there is no adequate alternative remedy other than dismissal.  After balancing the conflicting interests in this case, however, dismissal is not the only fair alternative at this time.

Dismissal is generally not imposed or affirmed.  See Wehling v. Columbia Broad. Sys., 608 F.2d at 1088 ("Neither, however, does the civil defendant have an absolute right to have the action dismissed anytime a plaintiff invokes his constitutional privilege.  When plaintiff's silence is constitutionally guaranteed, dismissal is appropriate only where other, less burdensome, remedies would be an ineffective means of preventing unfairness to defendant.").  In this case, there are two less drastic alternatives to dismissal which this Court should consider: granting a motion to compel or staying the matter until the threat of criminal prosecution has passed.

The first of these two alternatives would not promote fairness to both parties, particularly Chamberlin.  Under the circumstances of this case, the Court may not be on firm ground if it were to order Chamberlin to answer questions to which his Fifth Amendment privilege attaches.  See Wehling v. Columbia Broad. Sys., 608 F.2d at 1087 ("In short, the district court had no authority to order [the plaintiff] to disclose privileged information and, consequently, should not have imposed sanctions when [he] declined to answer.").  Lehocky attempted to persuade Chamberlin to waive the Fifth Amendment privilege that he raised in response to his deposition.  In response to that request, Chamberlin indicated that he would not waive his privilege.  Accordingly, granting a motion to compel is not a reasonable alternative.

Chamberlin is presenting a reasonable alternative: a stay of this case until the threat of criminal prosecution is over.  Chamberlin represents that a sixty day stay of litigation would allow him to

resolve all of his pending criminal charges, thereby rendering his present need to properly assert his Fifth Amendment privilege moot.  In <u>Wheling v. Columbia Broad. Sys.</u>, the United States Court of Appeals for the Fifth Circuit reversed the denial of the plaintiff's motion for a protective order and stayed the civil proceedings for three years, until the expiration of the criminal limitations period.  <u>See</u> 608 F.2d at 1089.  Similarly, Chamberlin brings this motion to prevent a situation in which he must choose between his proper assertion of his Fifth Amendment protection and his ability to bring this action.

Lehocky maintains that, not only did Chamberlin fail to file a motion to stay until he had to take advantage of civil discovery, but such a delay would impose a hardship on Lehocky.  Lehocky does  not identify what prejudice or hardship will result from a stay.  It is true that, without the requested discovery, Lehocky cannot move forward to either settle the case or to prepare for trial.  But that is the price of any stay.  Staying this case is a reasonable alternative.

In <u>Gonzales v. Duran</u>, Civ. No. 01-898 RLP/LFG, the plaintiff filed a motion to stay litigation.  Seven days after the plaintiff filed her complaint, the New Mexico Court of Appeals held that the Juvenile Court did not have jurisdiction to dismiss the criminal proceeding based on the alleged conduct of the police in the arrest of the plaintiff's daughter.  Because the criminal proceeding paralleled the civil case, the plaintiff sought to stay the litigation.  The Honorable Richard L. Puglisi, United States Magistrate Judge, sitting by designation, stated:

> Defendants argue that a plaintiff is not entitled to stay litigation when she herself chose the time to commence suit.  Although it is unusual for plaintiffs to request a stay of litigation, it is not unheard of.  <u>See</u> <u>Manning v. Teft</u>, 839 F. Supp. 126 (D. R.I. 1994).  That case arose out of the First Circuit which has a mandatory stay rule when the civil litigation involves matters that will be affected by the criminal proceeding.  <u>Id.</u> at 128.  The parties have not pointed this court to any contrary rule in this Circuit.  The general rule here seems to be that "a district court may stay civil proceedings

8

pending the outcome of parallel criminal proceedings." <u>Casas v. City of Overland Park</u>, 2000 WL 1310516, *1 (D. Kan. 2000) (unpublished opinion). Thus, the issue is left to the court's discretion.

Defendants have asserted no prejudice to their case and because of the pending substantive motion, the court finds that discretion should be exercised and the litigation stayed until the criminal matter is concluded.

<u>Gonzales v. Duran</u>, Memorandum Opinion and Order at 2 (D.N.M., filed May 20, 2003) (Doc. 162).

Alternatively, Lehocky asks the Court to extend the discovery deadline to allow him to take Chamberlin's deposition and to order Chamberlin to appear for his deposition. While those may be appropriate remedies at some point in this case, it may be unnecessary for the Court to enter such orders. Thus, these requests are premature. Chamberlin may at some point voluntarily appear for his deposition. Indeed, as far as the Court is aware, Chamberlin's deposition is now scheduled for January 5, 2004.[2] The Court will deny Lehocky's requests now without prejudice for him to renew them at an appropriate time if necessary.

## COSTS AND ATTORNEYS' FEES

Pursuant to rules 30(d)(3) and 37(a)(4)(A), Lehocky argues that the Court should require Chamberlin to pay the court reporter's appearance fee for the re-deposition and Lehocky's attorney's fees which were incurred in preparing his response to this motion. Rule 30(d)(3) provides: "If the court finds that any impediment, delay, or other conduct has frustrated the fair examination of the deponent, it may impose upon the persons responsible an appropriate sanction, including the reasonable costs and attorney's fees incurred by any parties as a result thereof." In addition, rule

---

[2] "THE COURT: Can we schedule his deposition for Monday, January 5th? MR. MONTOYA: The plaintiff will do everything in his power to get things squared away so we can do that. THE COURT: All right. Let's set this deposition -- How do the defendants feel about that? Can we set it for January 5th? MR. ROBLES: Yes." Transcript of Excerpts of Motion Proceedings, pg. 3, line 23 to pg. 4, line 5.

37(a)(4)(A) provides, in part, the following:

> If the motion [to compel] is granted or if the disclosure or requested discovery is provided after the motion was filed, the court shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorneys' fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37 (a)(4)(A).  See Fondren v. Republic Am. Life Ins. Co., 190 F.R.D. 597, 601-602 (N.D. Okla. 1999) (awarding sanctions pursuant to Fed. R. Civ. P. 37(a)(4) based on counsel's conduct during witness' deposition); International Union of Electrical Radio & Machine Workers, AFL-CIO v. Westinghouse Electric Corp., 91 F.R.D. 277, 280 (D.D.C. 1981) (awarding sanctions pursuant to rule 37(a)(4) based on counsel's instruction that witness not answer deposition questions on the basis of relevancy).

Lehocky contends that, if Chamberlin and his attorney were concerned about Chamberlin making an incriminating statement, Chamberlin should have filed his motion for protective order long ago.  But even if Chamberlin had filed his motion earlier, the Court does not see how Chamberlin could have avoided the predicament in which he has placed himself, Lehocky, and this Court. Lehocky would have opposed a motion to stay regardless of how early in the proceedings it was filed.[3]  The Court will deny Lehocky's request that the Court order Chamberlin to pay the cost of his

---

[3] At oral argument on this motion, Lehocky's counsel conceded that he would have opposed this motion, regardless of when Chamberlin filed it.  See Transcript of Excerpts of Motion Proceedings at pg. 2, line 21 to pg. 3, line 2.

redeposition and reasonable attorney's fees incurred in preparing the response to this motion.[4]

**WHEREFORE, IT IS ORDERED** that the Plaintiff's Motion for Protective Order Staying Further Litigation for Sixty (60) Days and for an Additional Scheduling Conference Thereafter is granted and the Court hereby stays all litigation herein for a period of sixty days.  The Court also denies without prejudice at this time Defendant Andrew Lehocky's requests that: (i) the Court dismiss Chamberlin's Amended Complaint with prejudice; (ii) the Court extend the discovery deadline to allow his to take Chamberlin's deposition; and (iii) the Court order Chamberlin to appear for his deposition.

_____
UNITED STATES DISTRICT JUDGE

Dennis W. Montoya
Montoya Law, Inc.
Albuquerque, New Mexico

    *Attorney for the Plaintiff*

Kathryn C. Levy
Deputy City Attorney
Albuquerque, New Mexico

    *Attorney for the Defendant City of Albuquerque*

_____

[4] The Court will also deny Lehocky's request that the Court order Chamberlin to pay the court reporter's $50.00 appearance fee from the first scheduled deposition.  Lehocky's counsel admits that, despite receiving Chamberlin's notice of non-appearance, he chose not to cancel the scheduled court reporter "because, certainly, Mr. Chamberlin could have changed his mind and shown up for the deposition, and we did not want to lose that opportunity."  Transcript of Excerpts of Motion Proceedings at pg. 2, lines 12-20.  Given that Lehocky took this risk, while it is an understandable litigation decision, there is no reason to shift the burden of that decision to Chamberlin.

Robert Becker
Luis Robles
French & Associates, PA
Albuquerque, New Mexico

*Attorneys for the Defendant Andrew Lehocky*