# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

DAVID R. CHAMBERLIN,

      Plaintiff,

vs.                                                              No. CIV 02-603 JB/ACT

THE CITY OF ALBUQUERQUE, and OFFICER
ANDREW LEHOCKY, individually and in his
official capacity as police officer,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Andrew Lehocky's[1] Motion for Protective Order Seeking Relief from the Unreasonable Expert Fees Charged by Plaintiff's Expert, Van Bogardus, and Sanctions, filed July 23, 2004 (Doc. 96). The Court held a hearing on this motion on May 18, 2005. The primary issue is whether the Court should sanction Plaintiff David R. Chamberlin and/or his counsel for Bogardus' refusal to be deposed during his telephonic deposition. Because the Court concludes that there may have been confusion about payment before the day of the deposition, and because both parties and the expert may share some responsibility for the ensuing dispute, the Court will deny Lehocky's motion for sanctions and fees, but will protect him from paying some of the charges that Bogardus is demanding.

## FACTUAL BACKGROUND

Lehocky's counsel deposed Bogardus in 2003 in another police dog bite case, see Smith v.

---

[1] In the Complaint, Chamberlin refers to the defendant-officer's name as "Andrew Lehockey." Complaint at 1, filed May 24, 2002, (Doc. 1). In Defendant Lehocky's Answer and subsequent pleadings, however, he spells his last name "Lehocky." Accordingly, the Court will adopt the spelling as proferred by Defendant Lehocky.

<u>City of Albuquerque</u>, No. Civ. 01-00416 (D.N.M., removed April 13, 2001)(Black, J.), without having to pay Bogardus' fee in advance of his deposition.  In that case, Lehocky's counsel paid Bogardus after the completion of his deposition.

Chamberlain has retained Bogardus as his police procedures expert in his case.  Bogardus submitted his rule 26 expert witness report, which indicated that his services "are charged at $75.00 for in-office work, $150.00 for out-of-office work."  Declaration of VanNess H. Bogardus III ¶ 7, at 2.  On June 10, 2004, Lehocky's counsel sent by facsimile transmission and by mail the Notice to Take Deposition for Van Bogardus scheduling his in-person deposition for June 28, 2004.  <u>See</u> Letter from Luis Robles to Dennis W. Montoya and Kathryn Levy (dated June 10, 2004); Notice to Take Deposition (served June 10, 2004).

On Monday, June 21, 2004, Bogardus sent a letter to Chamberlain's co-counsel, which stated:

Dear Mr. Montoya:

The following represents my projection of the costs associated with travel to Albuquerque, NM to offer deposition testimony in the above referenced case.  This quote is in keeping with my standard retainer agreement pertaining to travel outside of California.

| | | |
|---|---|---|
| 0635-0835 Hours, 27 June 2004: | Travel from Grass Valley, CA to Sacramento Int'l Airport, CA re: air travel for CHAMBERLIN Case.  Time charged at the standard rate of $150.00 per hour for 2 hours. | $ 300.00 |
| 0835-1035 Hours, 27 June 2004: | Check-in for departure at Sacramento Int'l Airport, CA re: air travel for CHAMBERLIN Case.  Time charged at the standard rate of $150.00 per hour for 2 hours. | 300.00 |
| 0630-2400 Hours, 27 June 2004: | CHAMBERLIN Case air travel from Sacramento Int'l Airport CA to Albuquerque, NM.  Conference with Mr. Montoya, Esq.  Time charged at the per diem rate of $895.00 for all day. | 895.00 |

| | | |
|---|---|---|
| 0001-2400 Hours, 28 June 2004: | Offering deposition testimony in the Case of CHAMBERLIN v. City of ALBUQUERQUE. Time charged at the per diem rate of $895.00 for all day. | 895.00 |
| 00001-1150 Hours, 29 June 2004 | CHAMBERLIN Case return air travel from Albuquerque, NM to Sacramento, CA.  Time charged to destination at the per diem rate of $895.00. | 895.00 |
| 1535-1735 Hours, 29 June 2004: | Travel from Sacramento Int'l Airport, CA to Grass Valley, CA re: return from CHAMBERLIN Case.  Time charged at the standard rate of $150.00 per hour for 2 hours. | 300.00 |
| | SUB-TOTAL TRIP | $ 3,585.00 |
| Related Expenses: | 1.    Round trip airfare via Southwest Airlines, Conf. H2HJVF | $ 512.90 |
| | 2.    Sacramento, CA, Economy parking at $7.00 per day for 3 days | 21.00 |
| | SUB-TOTAL EXPENSES | $ 533.90 |
| | TOTAL AMOUNT | $ 4,118.90 |

        In advance of the deposition, please arrange through opposing counsel, Luis Robles, Esquire, to tender a check for $4,118.90, covering the costs associated with this Chamberlin Case discovery deposition.

Letter from VanNess H. Bogardus III to Dennis Montoya (dated June 21, 2004).  Thus, the June 21, 2004 letter made clear that Lehocky must tender a check before the deposition took place.

        Given that Bogardus was going to charge a total of $4,118.90 to travel to Albuquerque to give his deposition in-person, however, Lehocky's counsel made the decision to depose Bogardus

-3-

telephonically.  Lehocky's counsel was particularly disturbed that Bogardus planned to bill the travel time both to and from Albuquerque.  See id.  Moreover, on top of charging the per diem rate of $895.00 to travel to Albuquerque on June 27, 2004, Bogardus also planned to charge an additional $600.00 to travel to the airport and to check-in for his flight.  See id.  In addition to charging the full per diem rate of $895.00 to travel back to California, on June 29, 2004, Bogardus also planned to charge an additional $300.00 to travel from the airport to his home.  See id.  Bogardus also intended to charge the Defendants for his conference with Chamberlin's co-counsel.  See id.

Upon receipt of the June 21, 2004 letter, Lehocky's counsel promptly advised Chamberlin's co-counsel that Bogardus' $4,118.90 fee for the in-person deposition was unreasonably high, and that defense counsel would, instead, take Bogardus' deposition telephonically.  See Transcript of Telephonic Deposition of VanNess Bogardus at 6:12 - 7:2 (dated June 28, 2004)(hereinafter "Bogardus Depo.").  As is his usual practice, Lehocky's counsel called Chamberlin's co-counsel instead of contacting Bogardus directly, because Bogardus was Chamberlin's designated expert witness.  See id. at 6:12-18; id. at 7:8-9.  On Wednesday, June 23, 2004, Lehocky's counsel sent by facsimile transmission the Amended Notice to Take Telephonic Deposition to all necessary parties, indicating that Bogardus' deposition was still scheduled for June 28, 2004, but that the deposition would now be conducted telephonically.  See Letter from Luis Robles to Dennis Montoya and Kathryn Levy (dated June 23, 2004); Amended Notice to Take Telephonic Deposition (served June 23, 2004).  The Amended Notice to Bogardus was sent in care of Chamberlin's co-counsel, Dennis Montoya, as opposed to Bogardus directly.

On Monday, June 28, 2004, Chamberlin's co-counsel, Lehocky's counsel, Albuquerque's counsel, and a court reporter were all present at the offices of Paul Baca Professional Court

Reporters while Bogardus appeared by telephone.  See Bogardus Depo. at 2.  Bogardus refused to

be deposed because Lehocky's counsel had not previously sent him a "certified check" for $600.00,

which represented his fee for the maximum four hours it might take to complete his deposition.  Id.

at 3:10 - 10:8.  Lehocky's counsel advised Bogardus and Chamberlin's co-counsel that he had a

check with him for Bogardus which he would give to Chamberlin's co-counsel at the deposition's

conclusion.  See id. at 3:10-13; id. at 3:22-25; id. at 8:8-14.  Lehocky's counsel had not filled out the

amount on the check because he did not know at that time exactly how long the deposition would

last.  See id. at 3:10-12; id. at 3:22-25.

     Bogardus, however, wanted the full $600.00 because that is how long that deposition could

potentially last.  See id. at 3:17-21; id. at 6:5-11.  Bogardus was also upset that he had purchased an

airline ticket and cleared his calendar in anticipation of giving an in-person deposition.  See id. at 5:3-

8; id. at 5:24-25 (explaining that Borgardus had "scheduled off for these days to be out there in

Albuquerque.").  Lehocky's counsel explained that Bogardus' fee for traveling to Albuquerque to

give a one-day deposition was too high, and Bogardus did not dispute this charge.  See id. at 5:9-17

(VanNess stated: "I'm sure [the price for the deposition] is too much money . . . .").  Lehocky's

counsel also reminded Bogardus that the Defendants had agreed to pay the "hard costs that [he] could

not recover," including his plane ticket if it was non-refundable.  See id. at 7:3-9.  Bogardus

explained, however, that, "in difficult situations, and this is turning out to be [one], I require a

certified check."  See id. at 8:2-3.  Thus, Bogardus refused to proceed with the deposition until there

was a "certified check" in the hands of Chamberlin's co-counsel before the start of the deposition.

See id. at 9:2-10.  Bogardus stated that he required a certified check in the amount of $600 for a

maximum four-hour deposition and $300 for a maximum two-hour deposition.  See id. at 9:4-10.

Although Bogardus contended that he had advised Chamberlin's secretary of the requirement that he be paid in advance of his telephonic deposition, Lehocky maintains that neither Bogardus nor Chamberlin's co-counsel had communicated this requirement to Lehocky's counsel before the June 28, 2004 telephonic deposition. Bogardus' advance requirement was new to Lehocky's counsel.

During the June 28, 2004 deposition, Chamberlin's co-counsel, Dennis Montoya, clarified that he is "not [] Bogardus' attorney. [Bogardus] is an independent expert[;] he has been contracted by the plaintiff, but [Montoya] is not his counsel." Id. at 8:21-23. Montoya did not instruct Bogardus to sit for the deposition, but, instead, stated that Bogardus was "entitled to bill the way he sees fit." Id. at 8:25 - 9:1. Thus, the June 28, 2004 deposition did not take place, and Lehocky's counsel indicated his intention to re-schedule Bogardus' deposition. See id. at 8:8-14; id. at 10:9.


On July 6, 2004, Bogardus sent a letter directly to Lehocky's counsel, which stated:

Dear Mr. Robles:

       To avoid further misunderstandings regarding my deposition in the above referenced case, I am herewith informing you of the current costs incurred.

| | | |
|---|---|---|
| 1300-1330 Hours, 10 June 2004: | Scheduling of deposition with the Notice to take Deposition, per Mr. Robles, Esq. Time charged at the standard rate of $150.00 per hour for .5 hour. | $ 75.00 |
| 1300-1330 Hours, 17 June 2004: | Scheduling of deposition in accordance with the Notice to take Deposition, per Mr. Robles, Esq. Time charged at the standard rate of $150.00 per hour for .5 hour. | 75.00 |
| 1100-1450 Hours, 21 June 2004: | Arrange travel from Grass Valley, CA to Albuquerque, NM for deposition. Generate projection letter for Mr. Robles, Esq. Time charged at standard rate of $150.00 per hour for 3.5 hours. | 525.00 |

-6-

| | | |
|---|---|---|
| 0800-1200 Hours, 28 June 2004: | Scheduled CHAMBERLIN deposition, in compliance with the Notice to take Deposition and Mr. Robles', Esq. request.  Time charged at the standard rate of $150.00 per hour for 4 hours. | 600.00 |

28 JUNE 2004, TOTAL:    $1,275.00

As we again schedule a deposition in the above referenced case, please add the current total of the charges to your projections.  Your certified check should include the 28 June 2004 balance of $1,275.00, $75.00 for the next .50 hour scheduling session and a $300.00 covering a minimum of two hours of deposition testimony time (i.e., $1,275 + 75.00 + 300.00 = $1,600.00).  If you require more time than two hours for this deposition, please calculate $150.00 per hour for the number of hours you wish me to schedule my time (i.e. 3 hours = $450.00, 4 hours = $600.00, etc.).

Letter from VanNess H. Bogardus III to Luis Robles (dated July 6, 2004).  In his July 6, 2004 letter, Bogardus, for the first time, sought to charge Lehocky for the administrative tasks associated with scheduling the June 28, 2004 deposition and with drafting his June 21, 2004 letter at a rate of $150.00, even though these clerical tasks were "in-office" work which, according to his fee schedule, should have been billed at no more than $75.00 per hour.  Compare Bogardus' June 21, 2004 Letter at 1, with Bogardus' July 6, 2004 letter at 1.  According to his July 6, 2004 letter, Bogardus seeks to charge Lehocky $675.00 for administrative, "in-office" work.  See Bogardus July 6, 2004 Letter at 1.

According to his July 6, 2004 letter, Bogardus also sought to charge Lehocky $600.00 for the June 28, 2004 deposition even though Bogardus refused to be deposed.  See id. at 1; Bogardus Depo. at 9:4-10.  Although Lehocky had agreed to reimburse Bogardus for the plane ticket he purchased in anticipation of the June 28, 2004 deposition, Lehocky suggests that he was able to obtain a refund for this item, as he did not bill for this in his July 6, 2004 letter.  See Bogardus' July 6, 2004 letter at 1.

As the parties seek to re-schedule the deposition, Bogardus seeks to charge another $75.00 for the half-hour he anticipates spending on unspecified "in-office" tasks relating to the scheduling of the deposition. Bogardus also continues to request that Lehocky estimate the maximum time the telephonic deposition will take and pay that amount in advance, even if the actual time of the deposition is significantly shorter.

## PROCEDURAL BACKGROUND

As rule 37(a)(2)(A) and D.N.M.LR-Civ. 7.1(a) require, Lehocky's counsel attempted in good faith to informally settle or resolve this motion before filing it. Lehocky's counsel also made a final effort to resolve this matter without the Court's intervention by sending by facsimile transmission a letter with a draft of this motion to Chamberlain's co-counsel to determine whether he opposed the motion. During a telephone call on July 22, 2004, Chamberlin's co-counsel stated that he did not concur in this motion. He would not change his position that Bogardus was entitled to bill as he saw fit.

Lehocky served this motion on Chamberlin on July 23, 2004. Lehocky moves pursuant to rules 26(b)(4)(C) and 26(e). Six days later, on July 29, 2004, the Court entered an Order staying the litigation. See Order, filed July 29, 2004 (Doc. 97). The Order states, in pertinent part, that "all litigation is stayed for 90 days" commencing July 29, 2004. Id.

According to Local Rule 7.6, "[a] response must be served within fourteen (14) calendar days after service of the motion." D.N.M. LR-Civ. 7.6. Neither Chamberlin nor Bogardus responded to Lehocky's motion for protective order.

On August 16, 2004, Chamberlin filed a Notice of Completion of Briefing for Andrew Lehocky's Motion for Protective Order Seeking Relief from the Unreasonable Expert Fees Charged

by Plaintiff's Expert, Van Bogardus, and Sanctions (Doc. 99). On August 17, 2004, Chamberlin filed the Plaintiff's Response to Officer Lehockey's [sic] "Notice of Completion of Briefing" (Doc. 100). In that Response, Chamberlin stated that it was his understanding and belief that no response to Lehocky's motion for protective order would be due until eight days after the Court lifted the stay. Chamberlin stated that, if a response is appropriate to Lehocky's motion "at this time," id., he requested permission to file a response: "Otherwise, Plaintiff will assume that the response is due eight (8) days after the stay is lifted." Id.

At a hearing held on February 23, 2005, the Court lifted the stay. See Clerk's Minutes at 1 (filed March 30, 2005). At the hearing, Lehocky noted that it needed a ruling on his motion for protective order. See Transcript of Hearing at 3:9-13 (executed February 23, 2005).[2] On March 30, 2005, the Court entered an order setting a hearing on this motion for May 18, 2005. See Notice of Motion Hearings, Pretrial Conference, Deadline to Exchange Pretrial Order and Jury Selection/Jury Trial, filed March 30, 2005 (Doc. 105).

The Court held a hearing on this matter on May 18, 2005. At the hearing, the Court expressed its concern that Bogardus was not present at the hearing despite that the motion for protective order concerns his fees. The Court agreed to allow Chamberlin's co-counsel to contact Bogardus and determine whether he wished to have an opportunity to be heard on this matter. On May 23, 2005, the Court received a letter from Chamberlin's co-counsel, Kathryn Hammel, which indicated that she relayed the Court's anticipated rulings given at the May 18, 2005 hearing, and that

---

[2] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any finalized transcript may contain slightly different page and/or line numbers.

"Bogardus accepts the Court's rulings and does not ask to be heard further on the matter." Letter from Kathryn Hammel to The Honorable James O. Browning at 1 (dated May 23, 2005).

## LAW REGARDING INSTRUCTIONS NOT
## TO ANSWER DEPOSITION QUESTIONS

The Honorable Lorenzo F. Garcia, Chief United States Magistrate Judge for the United States District Court for the District of New Mexico, has noted that "[i]nstructions to a deponent not to answer a question, except for purposes of preserving a privilege, adhering to a prior court order limiting the scope of a deposition, or [] terminat[ing] a deposition so as to seek an immediate protective order from a court, are inappropriate." Smith v. City of Albuquerque, Civ. No. 01-416 BB/LFG, slip op. at 2-3 (D.N.M. Jan. 29, 2002)(Doc. 61)(citing Resolution Trust Corp. v. Dabney, 73 F.3d 262, 266 (10th Cir. 1995), and Am. Hangar, Inc. v. Basic Line, Inc., 105 F.R.D. 173, 175 (D. Mass. 1985)). See Fed. R. Civ. P. 30(d)(1).

## LAW REGARDING EXPERT WITNESS FEES

Rule 26(c) provides:

Upon motion by a party . . . , accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . .

Rule 26(b)(4)(C) provides, in pertinent part: "Unless manifest injustice would result, (i) the court shall require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery under this subdivision . . . ."

In determining whether a fee request pursuant to rule 26(b)(4)(C) is reasonable, courts have

considered seven criteria:

> (1) the witness's area of expertise; (2) the education and training required to provide the expert insight that is sought; (3) the prevailing rates of other comparably respected available experts; (4) the nature, quality, and complexity of the discovery responses provided; (5) the fee actually charged to the party who retained the expert; (6) fees traditionally charged by the expert on related matters; and (7) any other factor likely to assist the court in balancing the interest implicated by Rule 26.

Delgado v. Sweeney, No. Civ.A. 01-3092, 2004 WL 228962, at *3 (E.D. Pa. Jan. 6, 2004)(quoting

Fisher-Price, Inc. v. Safety 1st, Inc., 217 F.R.D. 329, 333 (D. Del. 2003)).   These factors serve

merely as a guide.   See Adams v. Mem'l Sloan Kettering Cancer Ctr., No. 00 Civ. 9377(SHS), 2002

WL 1401979, at * 1 (S.D.N.Y. June 28, 2002).   The ultimate goal is to balance the parties' interests

so that the party retaining the expert witness is not unduly hampered in its efforts to attract competent

experts while the opposing party is not unfairly burdened by unfairly high fees preventing feasible

discovery and resulting in windfalls to the opposing side's expert.   See Mannarino v. United States,

218 F.R.D. 372, 374 (E.D.N.Y. 2003); Kernke v. Menninger Clinic, Inc., No. 00-2263-GTV, 2002

WL 334901, at * 1 (D. Kan. Feb. 26, 2002)("The court is mindful that while a party may contract

with any expert that it chooses, the court will not automatically tax the opposing party with any

unreasonable fees charged by the expert."); Adams v. Mem'l Sloan Kettering Cancer Ctr., 2002 WL

1401979 at * 1; Brew v. Ferraro, No. CIV.95-615-JD, 1998 WL 34058048, at *3 (D.N.H. Sept. 1,

1998)("Since the plaintiff had no involvement in the selection of the defendants' experts or in

negotiations on their fee schedules, her obligation is to pay only a 'reasonable' fee, not whatever rate

might be acceptable to the contracting parties.").   " Ultimately, it is in the court's discretion to set an

amount that it deems [] reasonable." Delgado v. Sweeney, 2004 WL 228962 at *3.   "Courts most

often reduce expert fee requests when the expert seeks to charge the opposing party a higher rate

than the expert charges the retaining party." Id.  See EEOC v. Johnson & Higgins, Inc., No. 93 Civ. 5481 LBS AJP, 1999 WL 32909, at *4 (S.D.N.Y. 1999)("Indeed, courts most often reduce expert fee requests when the expert seeks to charge the opposing party a higher rate than the expert charges the retaining party.").

## FEES AND COSTS FOR MOTIONS FOR PROTECTIVE ORDER

Rule 30(d)(3) provides: "If the court finds that any impediment, delay, or other conduct has frustrated the fair examination of the deponent, it may impose upon the persons responsible an appropriate sanction, including the reasonable costs and attorney's fees incurred by any parties as a result thereof."  In addition, rule 37(a)(4)(A) provides, in part, the following:

> If the motion is granted or if the disclosure or requested discovery is provided after the motion was filed, the court shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(4)(A).  See Fondren v. Republic Am. Life Ins. Co., 190 F.R.D. 597, 601-602 (N.D. Okla. 1999)(awarding sanctions pursuant to rule 37(a)(4) based on counsel's conduct during witness' deposition); Int'l Union of Elec. Radio and Mach. Workers v. Westinghouse Elec. Corp., 91 F.R.D. 277, 280 (D.D.C. 1981)(awarding sanctions pursuant to rule 37(a)(4) based on counsel's instructions that witness not answer deposition questions on the basis of relevancy).

## ANALYSIS

Bogardus refused to give his deposition on June 28, 2004.  While the Court does not necessarily approve of his conduct at the deposition, it appears that some messages about payment

may not have been delivered through counsel or staff.  Because the Court believes that there may have been failures to communicate messages about payment that led to an emotional exchange at the setting for the June 28, 2004, telephonic deposition, the Court will not assign blame or shift costs to the other side, but will give some guidance on what can be charged at any future deposition.

I.      **THE COURT WILL NOT SANCTION CHAMBERLIN OR HIS COUNSEL FOR BOGARDUS' REFUSAL TO PROCEED WITH THE JUNE 28, 2004 DEPOSITION.**

Lehocky asks for sanctions pursuant to rules 30(d)(3) and 37(a)(4)(A).  He requests that the Court order Chamberlin and/or his co-counsel to pay the cost associated with the June 28, 2004 deposition and reasonable attorney's fees incurred in preparing this motion.

Lehocky chose to conduct a telephonic deposition of Bogardus at a late date because the expert intended to charge what Lehocky considered to be an unreasonably high amount for an in-person deposition.  In particular, Lehocky found it unreasonable that Bogardus intended to bill for his travel time to and from Albuquerque and expected Lehocky to pay for his meeting with Chamberlin's co-counsel.

Lehocky's counsel notified Chamberlin's co-counsel on June 23, 2004 -- five days before the scheduled deposition -- that he would conduct the June 28th deposition telephonically.  Chamberlin's co-counsel thus knew five days in advance that Bogardus would be deposed from his office.  The record does not reflect when Bogardus knew of the change.

Bogardus refused to give a telephonic deposition because Lehocky's counsel had not provided a certified check for four hours -- regardless how long the deposition actually lasted --before the deposition's commencement.  Before the deposition, neither Bogardus nor Chamberlin's co-counsel advised Lehocky's counsel that he required payment via certified check in advance of the deposition.

-13-

There is some evidence that Bogardus had told the staff for Chamberlin's co-counsel that he needed to be paid in advance, but that message was not communicated to Lehocky.

Upon learning of Bogardus' refusal to proceed with the deposition, Lehocky's counsel stated that he had a business check in hand which he would give to Chamberlin's co-counsel at the conclusion of the deposition.  Although Chamberlin's co-counsel saw the check that Lehocky's counsel intended to give him to cover Bogardus' deposition fee, Chamberlin's co-counsel did not ask his expert to proceed with the deposition.  Instead, Chamberlin's co-counsel stated that Bogardus was "entitled to bill the way he sees fit."

Chamberlin's co-counsel did not instruct Bogardus not to answer questions.   Instead, he stood by and allowed Bogardus to refuse to sit for his deposition.  Chamberlin's co-counsel commented that Bogardus was entitled to bill any way he saw fit.  What Lehocky is thus really complaining about is that Chamberlin's co-counsel made no effort to convince his client's expert witness to answer deposition questions.

It is true that Chamberlin's co-counsel was not attempting to preserve a privilege, nor was he adhering to a prior order limiting the scope of the deposition.  Moreover, Chamberlin's co-counsel did not terminate the deposition and seek an immediate protective order.  On the other hand, the Court is not convinced that Chamberlin's co-counsel needed to do more -- legally-- than he did.  While he runs some risk that the Court may preclude Bogardus from testifying if he does not facilitate the taking of his expert's deposition, if his expert will not sit for a deposition, the Court is not convinced that Chamberlin should bear all the blame for his expert's decision not to answer questions.

The Court will thus not require Chamberlin or Chamberlin's co-counsel to pay the court reporter's appearance fee for or other costs associated with the June 28, 2004 deposition, for which

Bogardus refused to sit.  The Court will also not require them to pay the attorney's fees that Lehocky incurred in preparing this motion.  The Court will also not require Chamberlin or his co-counsel to incur the cost of obtaining the transcript of the June 28, 2004 exchange between Bogardus, Chamberlin's co-counsel, and Lehocky's counsel, wherein Bogardus refused to sit for his deposition. And because the Court has determined that the requested sanction is not appropriate, co-counsel for Lehocky need not submit an affidavit specifying the time expended preparing this motion,  co-counsel's hourly rate, or the costs associated with the June 28, 2004 deposition.

Lehocky asks that the Court order Bogardus to submit to a telephonic deposition.  Because Lehocky is an expert, and apparently was not under subpoena, the Court will not so order.  Unlike fact witnesses, experts remain free to give or not give their testimony.  If, however, Chamberlin wants Bogardus to testify at trial, he needs to make his expert available for a deposition.  Chamberlin and his co-counsel must also make certain that they and their expert do not so frustrate the taking of a deposition that the Court decides Lehocky has not had a fair opportunity to depose him and thus precludes his testimony.  See Sublette v. Glidden Co., 1998 WL 398156 at *4 (E.D. Pa. 1998)(indicating that, in a case regarding dispute about expert witness' fee, if expert witness does not attend deposition for any reason, "his testimony at trial may very well be precluded and other sanctions may be imposed.").

## II.   LEHOCKY MUST PAY BOGARDUS FOR FOUR HOURS OF FUTURE DEPOSITION TIME.

Bogardus contends that the Defendants must pay him for the four hours a deposition could potentially last even if it only takes an hour or two.  Lehocky contends that the Court should require him to pay Bogardus only for the time the expert actually spends giving a telephonic deposition.

Lehocky is willing to pay Bogardus for the actual time he spends giving his telephonic deposition.

The law does not require Lehocky to pay any amount that Bogardus chooses to charge, but that amount which is reasonable.  The Court cannot, however, say that Bogardus' request is unreasonable for Lehocky to pay for the entire four hours.  Part of the problem is Lehocky's counsel does not know how long Bogardus' deposition will actually last other than it will be a maximum of four hours.  Bogardus must block out four hours, regardless how long Lehocky's counsel actually takes.

It is often the case that the uncertain length of a planned deposition precludes the scheduling of other work by the expert.  The expert is entitled to be reasonably compensated for this lost time. Experts often charge for a minimal block of time to compensate for this problem.

Lehocky contends that Bogardus' work cannot be equated with that of a doctor who must cancel all patient appointments to give a deposition.  It is true that Bogardus is not a doctor who spends the majority of his time seeing patients.  Instead, Bogardus spends significant time reviewing police reports and other documents sent by clients to prepare expert witness reports and testimony. Thus, at the conclusion of the telephonic deposition, Bogardus might easily begin working on other matters in his office.

While Bogardus is in his office and perhaps easily could work on other matters in his office at the conclusion of the deposition, a deposition can interrupt a schedule.  It is not as easy as Lehocky suggests for some deponents to complete a deposition and immediately turn one's attention to other matters in the office.  There is usually an adrenaline rush while testifying under cross examination that makes one tired after the examination.  Even though he may be in his own office, Bogardus may not be able to simply put down the telephone and start reviewing documents or drafting rule 26 reports

-16-

for other clients.   Some people work that way; others' minds and bodies do not so work. Accordingly, the Court will not require Lehocky to pay Bogardus only for the actual time he spends giving his telephonic deposition, but will require him to pay $600.00 for the maximum four hour deposition.  See Bogardus July 6, 2004 Letter, at 1-2.

It is not reasonable, however, to require Lehocky to pay Bogardus in advance of his telephonic deposition.  See Sublette v. Glidden Co., 1998 WL 398156 at *4 (stating "despite [the expert's] demand that he be paid up-front, we do not believe that this is reasonable and will not require this of the Defendant.").  The Court will not require Lehocky to pay Bogardus with a certified check in advance of the deposition.  Bogardus does not have a good reason to doubt that Lehocky will pay him a reasonable fee.  Lehocky paid Bogardus for deposition testimony in an unrelated case. In that case, Bogardus did not require Lehocky pay in advance with a certified check.  Lehocky has five days from the date of the deposition to mail a business check to Bogardus.

## III.   THE COURT WILL NOT REDUCE BOGARDUS' RATE FOR TELEPHONIC DEPOSITION TESTIMONY FROM $150.00 PER HOUR TO $75.00 PER HOUR.

According to his rule 26 disclosures, Bogardus in his fee schedule indicates that he charges $75.00 per hour for "in-office" work and double that, $150.00 per hour, for "out-of-office" work. Lehocky requests that the Court reduce Bogardus' hourly rate for his telephonic deposition testimony.

Bogardus has not provided any explanation why he seeks to charge Lehocky $150.00 per hour for an in-office deposition.  It may well be that Bogardus' telephonic deposition is "in-office" work.  On the other hand, Bogardus could leave his office and take the telephone call somewhere else, thus qualifying for his out-of-office rate.

-17-

It may be, however, and most likely is the case, that the phrase "in-office" is shorthand for review of documents and the phrase "out-of-office" refers to testimony.  It is not unusual for an expert to charge more for testimony than for reviewing documents and preparing reports.

Lehocky contends that the Court should require Bogardus to charge one fee, not two.  It is unclear whether such a ruling would definitely help Lehocky, because Bogardus might charge the higher fee for all his work.  In any case, some courts have required one fee.  See Salimian v. Sec'y of Health and Human Servs., No. 91-1140V, 1992 WL 185710 at *3 (Cl. Ct. July 17, 1992)(stating: "I find no reason to increase [the expert witness'] rate for testimony; it is not any more taxing or inconvenient than reviewing medical records or drafting reports.").  The Court, however, believes that it is reasonable for an expert to distinguish between in-office work and testimony.  As previously noted, testimony in a deposition and at trial can be more stressful work.  Accordingly, the Court will not reduce Bogardus' rate for the telephonic deposition to $75.00 per hour.  The Court cannot determine that such a reduction would be consistent with the intent of his fee schedule.

## IV. OFFICER LEHOCKY IS ENTITLED TO A PROTECTIVE ORDER RELIEVING HIM FROM ANY OBLIGATION TO PAY SOME FEES BOGARDUS SEEKS IN HIS JULY 6, 2004 LETTER.

In his July 6, 2004 letter, Bogardus seeks to recover certain expenses and fees associated with the June 28, 2004 deposition.  Bogardus refused to sit for this telephonic deposition because Lehocky's counsel did not provide him a certified check in advance of the deposition.  Before agreeing to schedule another date for his telephonic deposition, Bogardus demands that Lehocky pay him for expenses and fees related to the June 28, 2004 deposition he refused to give.

Lehocky should not have to pay Bogardus' unreasonable expert fees.  Because Bogardus did not sit for his deposition, all fees that Bogardus seeks for his June 28, 2004 deposition are

-18-

unreasonable.  The Court will, however, give the parties guidance about what Lehocky must pay for any future deposition.

A.     SCHEDULING.

Bogardus first seeks to charge Lehocky a total of $150.00 that Bogardus contends represents the time he spent scheduling the June 28, 2004 deposition.  The July 6, 2004 letter indicates Bogardus spent a total of one hour scheduling the deposition.  It is unclear why this time is charged at the "out-of-office" rate.  Bogardus' rule 26 report indicates that his rate for "in-office" work is $75.00 per hour, not $150.00 per hour.  Scheduling a deposition would appear to be "in-office" work and therefore, under Bogardus' rate schedule, he should only have charged a total of $75.00, not $150.00.

In any case, Bogardus' rate of $150.00 per hour for clerical/administrative tasks associated with scheduling a deposition is unreasonable.  Such work does not require expertise in the area of law enforcement or the use of force, but basic administrative and clerical skills.  While the Court recognizes that many experts work without staff and thus keep overhead low, that fact is often reflected in the hourly rate that the expert charges, not in extra charges.  In any case, the expert cannot transfer all costs of doing business to the opposing party, but only those costs reasonably associated with the opposing party's securing of the expert's testimony.

If Bogardus wishes to transfer some of these scheduling costs to the deposing party, he should be paid a rate commensurate to that of an administrative assistant for the time he spent scheduling the June 28, 2004 deposition.  See Dominguez v. Syntex Laboratories, Inc., 149 F.R.D. 166, 170-71 (S.D. Ind. 1993)(finding that medical expert's fee for producing documents was unreasonable as this task consisted solely of clerical work for which a reasonable fee would be the same gross hourly rate the doctor paid his own clerical office workers); Mannarino v. United States, 218 F.R.D. at 375

-19-

(stating that courts expect "some reasonable relationship between the services rendered and the remuneration to which an expert is entitled" and that it is not reasonable to require parties in every case to pay the same amount regardless of the actual services rendered (quotation omitted)); Mark Andrew v. GMAC Commercial Mortgage Corp., No. 01 Civ. 1812 (JGK)(MHD), 2003 WL 21767633, at *1 (S.D.N.Y. 2003)(unexplained and unjustified administrative charge not compensable). Good administrative staff should be compensated well. The going rate in this locale probably does not generally exceed $30.00. It may be higher in California. Bogardus' time for scheduling can be charged at a rate of no more than $30.00 per hour for scheduling.

The Court has some difficulty understanding why it took Bogardus one hour to determine if he was available for a deposition and possibly to review the deposition notice. The Court can, however, imagine some adjustment of a calendar being necessary. The Court cannot, therefore, say that charge is unreasonable. The Court will, however, limit the scheduling charge to no more than one hour.

**B.      ARRANGING TRAVEL.**

Bogardus also seeks to charge Lehocky $525.00 for the time he alleges he spent arranging travel to Albuquerque for the June 28, 2004 deposition and generating a projection letter. At the most, this was "in-office" work which, according to Bogardus' fee schedule, he should have billed out at a rate of $75.00 per hour, not $150.00 per hour. Again, this is administrative/clerical work that Bogardus should bill at an appropriate rate. While he cannot charge for his prior work, if there is travel in the future, he may charge actual time at $30.00 per hour for time spent arranging travel.

### C.    DEPOSITION CHARGE.

Bogardus also seeks to charge Lehocky for the four-hour maximum that the deposition could have lasted at a rate of $150.00 per hour.  This $600.00 charge is unreasonable, as it was Bogardus' decision not to sit for that deposition.  He refused to answer any questions because he was not provided a certified check in advance of the deposition.  The Court will not require Lehocky to pay this fee.

### D.    RE-SCHEDULING FEE.

It is unreasonable that Bogardus seeks to charge Lehocky in advance for a half-hour to re-schedule his telephonic deposition for a total of $75.00.  Even under Bogardus' fee structure, the task of scheduling a deposition is "in-office" work that Bogardus should have charged at a rate of $75.00, not $150.00.  In any case, it should not take Bogardus very long to check his calendar to determine if this available on certain dates.  Moreover, this is administrative/clerical work that Bogardus should not charge at a rate of $150.00.  In the future, Lehocky should compensate Bogardus for the actual time and no more than thirty minutes that it should take him to re-schedule his telephonic deposition at the rate commensurate with that of an administrative/clerical worker.

**IT IS ORDERED** that Officer Lehocky's Motion for Relief from the Unreasonable Expert Fees Charged by Plaintiff's Expert, Van Bogardus, and Sanctions is granted in part and denied in part. Lehocky's request for sanctions is denied.  Lehocky's request that the Court order Bogardus to sit for a deposition is denied.  Lehocky shall compensate Bogardus for four hours of testimony at any future deposition.  Lehocky need not pay Bogardus' charges for fees and costs associated with the June 28, 2004 deposition, but needs to pay future reasonable charges as outlined in this order and

opinion.  Lehocky's request for an award of his attorney's fees and costs associated with the June 28,

2004 deposition costs, including the fees and costs expended in preparing this motion, is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Kathryn A. Hammel
The Hammel Law Firm
Albuquerque, New Mexico

*-- and --*

Dennis W. Montoya
Rio Rancho, New Mexico

    *Attorney for the Plaintiff*

Luis Robles
Christina E. Anaya
Robles, Rael & Anaya, P.C.
Albuquerque, New Mexico

    *Attorneys for Defendant Andrew Lehocky*

Kathryn Levy
  Deputy City Attorney
Albuquerque, New Mexico

    *Attorneys for Defendant City of Albuquerque*

VanNess H. Bogardus, III
Auburn, California

    *Plaintiff's Expert*