# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

DAVID R. CHAMBERLIN,

       Plaintiff,

vs.                                                                    No. CIV 02-0603 JB/ACT

THE CITY OF ALBUQUERQUE, and
OFFICER ANDREW LEHOCKY, individually
and in his official capacity as police officer,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Motion in Limine No. IV: The Admission Into Evidence of Plaintiff's Specific Acts of Misconduct to Refute his Claim for Damages and to Challenge his Ability to Accurately Perceive and Recall the Events Underlying the Suit, filed June 17, 2005 (Doc. 108). The Court held a hearing on this motion on July 14, 2005. Consistent with the Court's ruling at the hearing on this motion, and for the reasons given at the time of the hearing, the Court will grant Lehocky's motion in part and deny his motion in part.

## PROCEDURAL BACKGROUND

At trial, Chamberlin will allege that Lehocky's use of force against him was unreasonable, violating his Fourth Amendment rights. In his answers to Lehocky's first set of interrogatories, Chamberlin stated that he did not have a clear recollection of all of the crimes with which he has been charged. Chamberlin did, however, recall the crimes for which he had been convicted. Based on Chamberlin's discovery responses and a review of court files, Lehocky represents to the Court that Chamberlin has been convicted of the following crimes: (i) negligent use of a weapon and shooting

in an inhabited dwelling; and (ii) shoplifting.  Chamberlin also seeks to introduce criminal charges not resulting in convictions, which include: (i) manufacturing methamphetamine and possession of marijuana; (ii) forgery; (iii) possession of cocaine; (iv) domestic violence; and (v) shoplifting at Wal-Mart.  Moreover, Lehocky wishes to introduce the following evidence on Chamberlin's acts of uncharged misconduct, which pertain to use of narcotics and alcohol, and to mental health problems: (i) threat to former tenant; (ii) use of drugs in highschool; (iii) alcohol abuse; (iv) use of narcotics on the day of the incident underlying this suit; (v) use of alcohol on various days; (vi) mental health problems, including a treating psychiatrists' and doctors' opinion about Chamberlin's mental health, and Chamberlin's admission to a mental health center; (vii) Chamberlin's statements about his prior run-ins with the police; (viii) Chamberlin's denial of drug and alcohol use on various occasions; (ix) Chamberlin's brother's contention that Chamberlin had declined slowly since 1994 when he began to have paranoid thinking and that Chamberlin had recently been caught shoplifting; and (x) Chamberlin's statements to Barry Diskant, M.D., Lehocky's medical expert, that he had a problem with alcohol, that he had not used illegal drugs for three years, that God communicates with him daily, although he acknowledged this is not normal, and that, even though he has not attempted suicide, Chamberlin often thinks of being dead and sometimes feels as though he is communicating with the dead.

In this motion, Lehocky seeks a ruling allowing him to question Chamberlin and his witnesses regarding specific instances of Chamberlin's prior convictions, substance and alcohol abuse, and mental illness to rebut his claim for damages.  Lehocky also wishes to introduce elicit testimony about Chamberlin's pre- and post-incident drug and alcohol abuse and consumption of alcohol before the incident at issue in this suit to challenge his ability to perceive and to recall the events.

## ANALYSIS

Lehocky requests that this Court allow him to inquire about Chamberlin's uncharged misconduct, drug and alcohol abuse, and history of mental illness. Lehocky contends that rule 405(b) permits such an inquiry because these incidents are relevant to the issue of Chamberlin's claim for damages. Lehocky also avers that Chamberlin's alcohol and drug use, as well as his history of mental illness, is relevant and admissible to challenge Chamberlin's ability to accurately perceive and recall the incidents on the day in question.

Rule 405(b) of the Federal Rules of Evidence provides: "In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of that person's conduct." "Character is directly in issue in the strict sense when it is 'a material fact that under the substantive law determines rights and liabilities of the parties.'" Perrin v. Anderson, 784 F.2d 1040, 1045 (10th Cir. 1986)(quoting E. Cleary, *McCormick on Evidence* § 187, at 551 (3d ed. 1984)).

At the hearing on this motion, Chamberlin represented that he seeks garden variety, emotional distress damages arising out of Lehocky's actions with the police service dog. Because Chamberlin's uncharged misconduct, drug and alcohol abuse, and mental illness is relevant to rebut Chamberlin's claim of damages, the Court will allow Lehocky to introduce certain specific instances of Chamberlin's prior conduct as described in this opinion and order.[1]

---

[1] In its Memorandum Opinion and Order on Lehocky's MIL III, the Court decided that, if Chamberlin testifies, Lehocky may impeach him under rule 609(a)(1) with his prior felony conviction for negligent use of a firearm. See Memorandum Opinion and Order at 7-8, filed July 29, 2005 (Doc. 139).

I.     **ADMISSIBILITY OF CHAMBERLIN'S CRIMINAL CHARGES NOT RESULTING IN CONVICTIONS.**

The Court will allow Lehocky, when cross examining Chamberlin, to inquire about his use of methamphetamine and cocaine in 1985 and 1986, respectively.  If Chamberlin admits to this use, then the Court precludes Lehocky from making any further inquiry into these drug-related arrests; Lehocky may not inquire about the manufacturing of methamphetamine, the search warrants, or the arrests.  If, however, Chamberlin denies using methamphetamine and cocaine, the Court may allow more evidence surrounding these incidents to be admitted, the scope of which the Court will decide on a question-by-question basis at trial.

The Court will not permit Lehocky to introduce evidence of Chamberlin's arrests for forgery, domestic violence, and shoplifting.

II.    **ADMISSION OF CHAMBERLIN'S ACTS OF UNCHARGED MISCONDUCT, USE OF NARCOTICS AND ALCOHOL, AND MENTAL HEALTH PROBLEMS.**

In his motion, Lehocky enumerates twenty-seven separate incidents which he seeks to admit to rebut Chamberlin's claim of damages.  The Court will address each proffered incident separately.

As general guidance, the Court will allow Lehocky to introduce Chamberlin's admissions and denials of drug and alcohol use.  Lehocky may also question Chamberlin and his witnesses about his history of mental health issues.

The Court, however, cautions Lehocky that, although relevant, the form in which he offers this evidence must comport with the other Rules of Evidence.  For example, in terms of Lehocky's mental health expert, he can testify about his opinion on Chamberlin's mental health problems and drug and alcohol abuse, and base those opinions on the reports by Dr. Steven Jenkusky, the treating physician.  See Fed. R. Evid. 703.  Lehocky may not, however, have his expert, who was not the

-4-

treating physician or psychiatrist, introduce the underlying reports or information and facts contained in those reports.  See Advisory Committee Notes to Fed. R. Evid. 703 ("Rule 703 has been amended to emphasize that when an expert reasonably relies on inadmissible information to form an opinion or inference, the underlying information is not admissible simply because the opinion or inference is admitted."); 30 Charles Alan Wright, Arthur R. Miller & Kenneth W. Graham, Jr., Fed. Prac. & Proc. Evid. § 6337 ("[A]n expert cannot be called solely as a conduit for smuggling hearsay to the jury.").[2] Thus, Lehocky's expert cannot testify about the direct statements contained in the medical reports, but can review the reports and testify about his opinions based in part on those materials.

In accordance with this general guidance, the evidence on Chamberlin's other uncharged acts of misconduct, drug and alcohol use, and mental illness are admissible as follows:

1. **Threat to Former Tenant**.  Inadmissible.

2. **Use of Drugs in Highschool**.  Admissible.

3. **Alcohol abuse**.  Admissible.

4. **Use of Narcotics on the Day of the Incident Underlying this Suit**.  Lehocky may testify about his observations of Chamberlin's physical appearance and what he believed the dark circles around his eyes represented.  Lehocky, however, should proceed with caution and not open the door and allow in prior incidents of force.

_____

[2] This concern arises out of the form in which Lehocky presented his list of Chamberlin's uncharged misconduct, drug and alcohol abuse, and mental illness.  Many of these incidents rely upon an excerpt of Dr. Barry Diskant's report.  Although the report does not specify on which materials Dr. Diskant relies, it appears to have compiled various medical records and reports.  While Dr. Diskant can rely on these materials in forming his opinion about Chamberlin's mental health and drug and alcohol use, Lehocky, as the proponent of the expert's testimony, cannot solicit the underlying facts and conclusions contained in these documents or summarized in his report.  See Fed. R. Evid. 703.

5. **Use of Alcohol**.  Inadmissible unless Chamberlin, in his testimony, denies use of alcohol.

6. **Mental Health Problems**.  Admissible.

7. **Mental Health Problems and Use of Drugs and Alcohol**.  Facts about being transported to the emergency room, any admissions made by Chamberlin, and opinions that a professional can make as a treating physician are admissible if otherwise offered in a form consistent with the rules of evidence.  Lehocky has not, however, identified Dr. Jenkusky as an expert; therefore, Lehocky's expert cannot merely report what Dr. Jenkusky has said.  Lehocky will have to avoid making Dr. Jenkusky merely a conduit for hearsay.

8. **Use of Drugs and Alcohol, Contact with Police**.  Chamberlin's admission of a "20-year history of amphetamine use" is admissible if it is offered in an admissible form.  Lehocky may not inquire, however, about Chamberlin's statement that he has had continuous problems with the law and approximately 100 run-ins with the Albuquerque Police Department.  Chamberlin's representation that he was cutting his owns legs with a knife on the same day as the incident with Lehocky is admissible if it is offered in an admissible form.  Lehocky may introduce evidence that some of Chamberlin's leg wounds were straight and narrow if it is offered in an admissible form, but the Court precludes Lehocky from offering testimony that the wounds were consistent with a knife.  On the reference to Dr. Jenkusky's report, see ruling on number 7.

9. **Use of Drugs and Mental Health Problems**.  Admissible.

10. **Alcohol Abuse and Mental Health Problems**.  Admissible if consistent with the ruling on number 7.

11. **Mental Health Problems**.  Admissible.

12. **Effects of Drugs and Alcohol on Chamberlin**.  Dr. Jenkusky's notation that Chamberlin

"showed limited insight in to [sic] the role that drugs and alcohol played in the situation" is not directly admissible through Lehocky's expert, but the expert can so opine if he is qualified to do so and has indicated in his report he will do so. The Court will not allow Dr. Jenkusky's discussion about the role of Chamberlin's drug abuse might play in causing brain damage, but again, Lehocky's expert may be able to do so.

13. **Denial of Drug Abuse**. Admissible.

14. **Mental Health Problems**. Admissible if consistent with the ruling on number 7.

15. **Effects of Drug Use on Mental Health**. Admissible if consistent with the ruling on number 7.

16. **Discharge from UNM Mental Health Center**. Admissible.

17. **Mental Health Problems**. Admissible.

18. **Mental Health Problems**. Admissible.

19. **Mental Health Problems and Alcohol Abuse**. Admissible.

20. **Mental Health Problems**. Admissible.

21. **Alcohol Abuse**. Admissible.

22. **Alcohol Abuse**. Admissible.

23. **Mental Health Problems and Criminal Conduct**. Admissible.

24. **Alcohol Abuse**. Admissible.

25. **Alcohol and Drug Abuse and Mental Health Problems**. Admissible.

26. **Alcohol Abuse**. Admissible.

27. **Alcohol Abuse and Mental Health Problems**. Admissible.

**IT IS ORDERED** that Defendant's Motion in Limine No. IV: The Admission Into Evidence of Plaintiff's Specific Acts of Misconduct to Refute his Claim for Damages and to Challenge his Ability to Accurately Perceive and Recall the Events Underlying the Suit is granted in part and denied in part.

UNITED STATES DISTRICT JUDGE

*Counsel*:

Kathryn A. Hammel
The Hammel Law Firm
Albuquerque, New Mexico

-- *and* --

Dennis W. Montoya
Rio Rancho, New Mexico

    *Attorney for the Plaintiff*

Luis Robles
Christina E. Anaya
Robles, Rael & Anaya, P.C.
Albuquerque, New Mexico

    *Attorneys for Defendant Andrew Lehocky*

Kathryn Levy
  Deputy City Attorney
Albuquerque, New Mexico

    *Attorney for Defendant City of Albuquerque*